IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERYME MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   18-cv-430-RJD |
| ) | |
| MISTY NEW, CYNTHIA L. GIMBER, ) | |
| MAYNARD HUDSON, LACY MEZO, ) | |
| MATTHEW PURDOM, BRIAN MINER, and ) | |
| FRANK LAWRENCE, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Jeryme Morgan, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). More specifically, Plaintiff alleges mailroom staff intentionally and routinely opened and discarded his incoming legal mail and certain staff members did so in retaliation for Plaintiff pursuing litigation against prison staff. Plaintiff is proceeding on the following claims set forth in his Second Amended Complaint against Defendants Misty New, Cynthia Gimber, Maynard Hudson, Matthew Purdom, Brian Miner, and Frank Lawrence (Doc. 55) (as enumerated in the Second Amended Complaint):

Count 2:   Defendants violated Plaintiff's First Amendment rights by destroying and failing to deliver Plaintiff's mail.

Count 3:   Defendants violated Plaintiff's First Amendment rights by retaliating against him for filing grievances and lawsuits that challenged the conditions of his confinement.

This matter is now before the Court on Defendants' Motion for Summary Judgment[1] (Doc. 83). For the reasons set forth below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

### Factual Background

Plaintiff's complaint arises from events that occurred while he was incarcerated at Menard Correctional Center from November 2014 to March 2017. More specifically, from 2015 to 2017, Plaintiff asserts he received legal mail more than twelve times that had been improperly opened prior to delivery, in contravention of policy (*see* Plaintiff's Deposition, Doc. 85 at 36-77).

By way of background, Menard policy generally requires the mailroom to make decisions as to whether an item is legal mail (Declaration of Lacy Mezo, Doc. 81-5 at ¶ 2). The mailroom opens and searches non-legal mail prior to delivery to inmates (*Id.*). When an item is determined to be legal mail, policy dictates that it be opened in front of the inmate and both the inmate and the delivering officer sign a receipt for the legal mail (*Id.* at ¶ 7). The Illinois Administrative Code defines "legal mail" as mail to and from: (1) registered attorneys who provide direct legal representation to offenders; (2) State's Attorneys; (3) the Illinois Attorney General; (4) Judges or magistrates of any court or the Illinois Court of Claims Judges; and (5) any organization that provides direct legal representation to offenders, but not including organizations that provide referrals to attorneys, such as bar associations. 20 ILCS 525.110(h). According to Sgt. Walter McGee, an officer at Menard who had responsibilities for mail delivery, he had access to this list and provision of the Illinois Administrative Code, and could refer to it as necessary in determining whether mail constituted legal mail (Deposition of Walter McGee, Doc. 94-8 at 15-16).

---

[1] In their motion for summary judgment, Defendants reference three counts they assert are pending in this action. Defendants are incorrect. The operative complaint is Plaintiff's Second Amended Complaint filed on June 25, 2019 (Doc. 55). This Complaint sets forth only two claims – designated as Counts 2 and 3. Count 1 was dismissed in the Court's threshold order entered on April 13, 2018 (Doc. 6).

Related to his Complaint, Plaintiff presented evidence that his legal mail was opened outside of his presence and content was missing on dates on which Defendants New, Gimber, Miner, Mezo, Purdom, and Lawrence worked in, or supervised, the Menard mailroom (*see* Doc. 94-2; Doc. 81-4; Doc. 94-3; Doc. 94-4; Doc. 94-6).  Although Plaintiff cannot identify the individual who opened his legal mail, he testified that mail from the law firm Loevy & Loevy was improperly opened on May 20, 2015, September 8, 2015, and May 27, 2016 (Doc. 85 at 38, 53, 66); mail from the Illinois Attorney General's Office was improperly opened on June 29, 2015, August 31, 2015, twice around October 2015, and again on November 6, 2015 (*Id.* at 41, 51, and 61; Doc. 98 at ¶ 7); mail from the New York Attorney General's Office was improperly opened on July 15, 2015 and February 10, 2016 (*Id.* at 49 and 63); mail from the Illinois Court of Claims was improperly opened on July 21, 2016 (*Id.* at 70); mail from the John Marshall Law School was improperly opened on January 13, 2017 (*Id.* at 74); and mail from Attorney Barry Lewis on March 10, 2017 (*Id.* at 77).  Plaintiff also asserts that mail from the Court of Claims postmarked February 11, 2016 and mail from the Illinois Attorney General's Office postmarked March 11, 2016 was improperly opened; however, it is not clear when these mailings were delivered (Doc. 98 at ¶ 10, 32-33).  On many of these occasions, contents from the envelopes were missing (Doc. 85 at 38). These mailings were also stamped as follows: "This correspondence was not clearly marked as 'LEGAL' or 'PRIVILEGED' therefore it was opened in the mailroom. Please notify sender so mail can be marked accordingly" (*see, e.g.,* Doc. 94-5 at 7).  Plaintiff disputes that much of this mail was not properly marked as legal.

With regard to Defendants and their involvement in opening and otherwise tampering with Plaintiff's legal mail, Plaintiff has presented evidence that Defendant Miner was the supervisor in the mailroom on May 20, 2015 and August 31, 2015, and Plaintiff received improperly opened

legal mail on these dates (Doc. 94-6; Doc. 94-3 at 13).  Defendant Purdom also worked in the mailroom on May 20, 2015; however, he was not the only employee working in the mailroom on this date (*Id.* at 8).  Misty New was the supervisor in the mailroom on July 1, 2015, the date on which a piece of mail from the Attorney General of New York was postmarked (*Id.* at 12; *see* Doc. 98 at 15).  New was also the mailroom supervisor on May 18 and 19, 2016, and Plaintiff received opened legal mail from an attorney from Loevy & Loevy on May 27, 2016 (Doc. 94-2 and Doc. 94-3 at 23).  Gimber was the mailroom supervisor on October 14, 2015, October 26, 2015, and November 5, 2015, and Plaintiff received two pieces of opened mail from the Illinois Attorney General's Office sometime in October 2015 and again on November 6, 2015 (Doc. 94-10 and Doc. 94-3 at 15-18).  Gimber was also supervisor in the mailroom on February 3, 10, 11, 2016, and March 11, 2016, dates around which he received legal mail from the Attorney General of New York, the Attorney General of Illinois, and the Illinois Court of Claims (Doc. 94-10; Doc. 94-3 at 10).  Further, Gimber, New, and Miner were all on duty in the mailroom on July 18 and 21, 2016, and Plaintiff received an opened letter from the Illinois Court of Claims on July 21, 2016 (*Id.* at 2, 24).  Finally, Lawrence signed-off on timesheets as the mailroom supervisor on January 11, 2017, January 13, 2017, March 10, 2017, and March 20, 2017, and Plaintiff received mail from the John Marshall Law School that was improperly opened on January 13, 2017, and mail from Barry Lewis on March 10, 2017 (*Id.* at 3-5, 25; Doc. 85 at 74, 77).

Around November or December 2016, Plaintiff complained to Defendant Sgt. Hudson about his legal mail being opened outside of his presence (Declaration of Jeryme Morgan, Doc. 98 at ¶ 18).  Hudson responded by telling Plaintiff that maybe he should stop filing lawsuits and writing grievances (*Id.*; Doc. 85 at 80).  Hudson further indicated that Plaintiff's legal mail would continue to be opened as long as Plaintiff continued to pursue litigation against prison staff (Doc.

98 at ¶ 18).   Hudson again made a similar remark to Plaintiff sometime in 2017 (*Id.*).   At the time Hudson made these remarks, Plaintiff had a pending lawsuit against Hudson (Doc. 98 at ¶¶ 20-21).

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### Discussion

*Count Two – First Amendment claim against Defendants for destroying and failing to deliver Plaintiff's mail*

In Count 2, Plaintiff alleges Defendants demonstrated a consistent policy and practice of intentionally failing to deliver the contents of Plaintiff's legal mail, thereby interfering with his constitutional right to send and receive legal mail.

The Supreme Court has held, "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). In this vein, the Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987)). A valid First Amendment claim regarding interference in communications requires "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2002) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment.") (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829 F.2d 608, 610 (7th Cir. 1987)).

In their motion for summary judgment, Defendants assert they did not violate Plaintiff's First Amendment rights because there is no evidence Plaintiff was harmed from the opening of his legal mail and he has not alleged that his ability to "pursue a legal claim or defense" was affected by Defendants' actions. Defendants' argument misses the mark. The inability to pursue a legal claim or defense factors into consideration of a claim for denial of access to the courts based on the improper opening, or interference with, attorney-client correspondence. This claim was dismissed in the Court's threshold order. Before the Court is the question of whether the interference in Plaintiff's communications by Defendants was continuing or repeated so much so as to rise to a constitutional violation. While Defendants may have missed the mark on their argument, the evidence before the Court is not sufficient to defeat summary judgment.

Plaintiff's mail was opened and contents were missing more than a dozen times. However, there is no evidence that any one Defendant was involved in a "continuing pattern" of

denying or delaying Plaintiff's mail delivery. Notably, there is no evidence that any Defendant even opened Plaintiff's mail. Plaintiff is relying on the fact that Defendants worked in or supervised the mailroom on or around days when improperly opened mail was delivered. However, many of the dates on which mail was improperly opened and delivered to Plaintiff do not align with the dates on which Defendants were working in, or supervising, the mailroom. Indeed, many of the dates cited by Plaintiff as dates on which Defendants were working in the mailroom align with the *postmark* date on the mail, not the *delivery* date. Defendants clearly could not interfere with mail that had not yet been received. Further, there were often numerous individuals who worked in the mailroom on any given day, many of whom are not named as defendants in this action.

To find that Defendants were each personally responsible for the continued improper opening of Plaintiff's mail would require the Court to pile inference upon inference and, even then, it is not apparent that the personal responsibility requirements under § 1983 could be met. Notably, liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Here, there is simply insufficient evidence to find that any particular Defendant was personally responsible or engaged in any specific action to repeatedly interfere with Plaintiff's mail to sustain a First Amendment claim.

Further, this is not an instance where Plaintiff has moved against the warden or IDOC for instituting an unconstitutional policy or practice. The Court recognizes Plaintiff named

Defendants in both their official and individual capacities, and included blanket allegations in his complaint that Defendants "demonstrated a consistent policy and practice of intentionally failing to deliver the contents of Plaintiff's legal mail." Plaintiff's complaint seems to attempt to allege a *Monell* policy and practice claim. Insofar as this was Plaintiff's intention, such claim clearly fails. Under *Monell*, governmental entities can be held responsible for constitutional violations "only when they themselves cause the deprivation of rights." *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020). Insofar as Plaintiff has not named any particular governmental entity for instituting or implementing an unconstitutional policy or practice, any purported policy and practice claim fails.

For these reasons, summary judgment as to all Defendants is granted on Count One.

### *Count Three – First Amendment retaliation claim against Defendants*

A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, the plaintiff must produce evidence that his speech was at least a "motivating" factor in the defendant's decision to take retaliatory action. *Id.*

Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence and show that the harm would have occurred anyway, despite the protected activity. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.*

Based on the evidence in the record, it is apparent Plaintiff engaged in activity protected by the First Amendment in filing lawsuits and grievances, and Defendants do not make an argument to the contrary. Next, the Court considers whether Plaintiff suffered a deprivation likely to deter First Amendment activity. Defendant Hudson[2] argues Plaintiff was not harmed in any way and there is no evidence that Plaintiff was unable to pursue a legal claim or defense due to Defendant's actions. Again, however, this is not the question — the question is whether Plaintiff suffered a deprivation likely to deter First Amendment activity. The Court finds this question must be answered in the affirmative as repeated inference with Plaintiff's mail is a deprivation likely to deter First Amendment activity. *See Dobbey v. Jeffreys*, 417 F.Supp.3d 1103, 1110 (N.D. Ill. Oct. 8, 2019); *compare Pietila v. York*, No. 20-cv-506-bbc, 2020 WL 4586403, *1 (W.D. Wis. Aug. 10, 2020) (finding the officer-defendant's "one-time decision to open plaintiff's mail was not unconstitutional, and an ordinary prisoner would not be deterred from engaging in protected speech by [the defendant's] action.").

Next, the Court considers whether Plaintiff's First Amendment activity was a "motivating factor" in Defendants' decisions to take retaliatory action. In considering this element, the Court must look to the actions of each Defendant individually. First, the Court considers Defendant

---

[2] Defendants' brief limits their argument on Plaintiff's retaliation claim to Defendant Hudson and do not address any other Defendants in this portion of their brief.

Hudson.  In the light most favorable to Plaintiff, the evidence demonstrates that in November or December 2016, Defendant Hudson made statements to Plaintiff indicating that his legal mail would continue to be opened so long as he continued to pursue litigation against prison staff.  This clearly establishes a prima facie case that Defendant Hudson acted to interfere with Plaintiff's mail, or at least had knowledge of the same and failed to rectify the situation, in retaliation for Plaintiff filing lawsuits against prison staff.  Defendant Hudson has failed to introduce any evidence in an attempt to rebut Plaintiff's evidence of retaliatory motive.  Thus, Plaintiff shall proceed on Count 3 against Defendant Hudson.

Summary judgment, however, should be awarded in favor of the remaining Defendants – Misty New, Cynthia Gimber, Lacy Mezo, Matthew Purdom, Brian Miner, and Frank Lawrence – as there is insufficient evidence for a reasonable jury to find they either interfered with Plaintiff's mail, or knew of the same, in retaliation for Plaintiff engaging in First Amendment activity.  Indeed, Plaintiff has failed to introduce any direct or circumstantial evidence that these Defendants took any action in retaliation for Plaintiff filing grievances or lawsuits.  There is no indication Defendants were even aware of Plaintiff's First Amendment activities.  For this reason, pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff is notified that summary judgment will be granted in favor of Defendants New, Gimber, Mezo, Purdom, Miner, and Lawrence on Count 3.

Any evidence opposing summary judgment under Rule 56(f) for the reasons provided **must** be filed by **February 12, 2021**.

*Qualified Immunity*

With regard to Defendants New, Gimber, Mezo, Purdom, Miner, and Lawrence, the Court need not consider the issue of qualified immunity because it has already concluded that the evidence, when viewed in a light most favorable to Plaintiff, does not establish a genuine issue of

fact as to whether Defendants violated Plaintiff's constitutional rights.

The Court, however, rejects Defendant Hudson's argument concerning qualified immunity. At the time of the events in question, it was clearly established that interfering with an inmate's mail in retaliation for the inmate filing grievances and lawsuits implicates an inmate's constitutional rights.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Misty New, Cynthia Gimber, Maynard Hudson, Lacy Mezo, Matthew Purdom, Brian Miner, and Frank Lawrence (Doc. 83) is **GRANTED IN PART AND DENIED IN PART**. The Clerk of Court shall enter judgment in favor of Defendants New, Gimber, Mezo, Purdom, Miner, Hudson, and Lawrence and against Plaintiff as to Count 2 at the close of this case.

Pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff is notified that summary judgment will be granted in favor of Defendants New, Gimber, Mezo, Purdom, Miner, and Lawrence as to Count 3. Any evidence opposing summary judgment under Rule 56(f) for the reasons provided **must** be filed by **February 12, 2021.**

Plaintiff shall proceed in this action on the following claim:

Count 3:   Defendant Hudson violated Plaintiff's First Amendment rights by retaliating against him for filing grievances and lawsuits that challenged the conditions of his confinement.

**IT IS SO ORDERED.**

**DATED: January 13, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**